**IN THE UNITED STATES DISTRICT COURT**
**OF THE EASTERN DISTRICT OF TEXAS**
**TEXARKANA DIVISION**

| | | |
|---|---|---|
| **DOYLE HICKSON, RAFAEL CAMPOS,** | § | |
| **MICHELLE FERGUSON, BURNIS** | § | |
| **HALL, CAROL MEADOWS, JAMIE** | § | |
| **MENDEZ AND GERARDO TREVINO,** | § | |
| **INDIVIDUALLY AND ON BEHALF OF** | § | |
| **ALL OTHERS SIMILARLY SITUATED** | § | **No.  5:09CV83** |
| | § | |
| **Plaintiffs** | § | |
| | § | |
| **V.** | § | |
| | § | |
| **UNITED STATES POSTAL SERVICE** | § | |
| **Defendant** | § | |

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

The above-referenced cause of action was referred to the undersigned United States Magistrate Judge for pre-trial purposes in accordance with 28 U.S.C. § 636.  The following motions are before the Court: Plaintiff's Motion to Conditionally Certify Collective Action (Docket Entry # 20) and Defendant's Motion to Strike Declarations Offered in Support of Plaintiffs' Motion to Conditionally Certify Collective Action (Docket Entry # 41). The Court, having reviewed the relevant briefing and hearing arguments of counsel June 30, 2010, recommends Plaintiffs' motion to conditionally certify a collective action be **DENIED**.  Defendant's motion to strike is **DENIED**.

**I.     FACTUAL BACKGROUND**

Doyle Hickson, Rafael Campos, Michelle Ferguson, Burnis Hall, Carol Meadows, Jamie Mendez, and Gerardo Trevino, all individually and on behalf of all others similarly situated ("Plaintiffs"), filed this collective action against the United States Postal Service ("Defendant" or the "USPS") for alleged violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201 *et.*

*seq*.  Plaintiffs and the putative class members are former or current non-exempt city postal carriers ("City Carriers") for the USPS and have allegedly (i) had overtime disallowed, (ii) had time improperly changed by a supervisor, (iii) been required to work through lunch to complete their route, (iv) worked while off-the-clock, and/or (v) worked overtime and not been paid. Specifically, Plaintiffs allege the USPS failed to compensate Plaintiffs and the putative class members for "off the clock" labor; required Plaintiffs and the putative class members to work through lunch to complete their overburdened routes; and improperly altered the time records of Plaintiffs and the putative class members to deprive them of full compensation.

Plaintiffs bring this motion seeking: (i) approval for the case to proceed as a collective action for overtime compensation under the FLSA; and (ii) authorization to issue notice and Consent To Join forms to all non-exempt USPS City Carriers in the USPS Southwest Region of Texas, New Mexico, Louisiana, Arkansas and Oklahoma.[1] Plaintiffs seek an Order requiring the USPS to produce a computer readable data file containing the names, addresses, and telephone numbers of all such Affected Employees so that notice may be implemented.  Plaintiffs further seek an Order authorizing Plaintiffs' counsel to mail the notice to all Affected Employees within twenty days of receipt of the data files.

Defendant opposes Plaintiffs' motion, first asserting Plaintiffs have not even stated an FLSA claim.  According to Defendant, most, if not all, of Plaintiffs' complaints are not FLSA violations. Defendant further asserts this case should not be conditionally certified as a collective action because

---

[1] The putative class members are all persons who are or have been employed as City Carriers by the USPS as non-exempt employees in the Southwest Area at any time during the Class Period that commences as of three years prior to the filing date of the complaint and continues until the final disposition of this case.

Plaintiffs have submitted no competent evidence, as they must, to support their request for conditional certification.  Assuming Plaintiffs' allegations and evidence reveal USPS practices that are FLSA violations, Defendant contends Plaintiffs have failed to allege the named plaintiffs and the putative class members are similarly situated with respect to a common or single Southwest Area policy, practice, or decision. According to Defendant, Plaintiffs complain about alleged practices which, even if they occurred, are the result of individual decisions made at the local supervisor level, which contravened USPS policy and practices and which make this action too individualized for collective action treatment.

In a separate motion to strike, Defendant argues the Court should strike or not consider the declarations attached to Plaintiffs' briefing because the declarations lack the fundamental components that would otherwise make them competent evidence. Defendant asserts the statements contained in the declarations lack foundation, are not based on personal knowledge, contain hearsay, are based on wild speculation, are conclusory, and in some cases, contradict positions taken by the declarants in other judicial proceedings.

In their reply to their motion for conditional certification, Plaintiffs point out that their burden at the "notice stage" is a "fairly lenient" one, which "typically results in 'conditional certification' of a representative class." Plaintiffs' reply at 1, *quoting Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1214 (5th Cir. 1995).  Plaintiffs assert their pleadings, affidavits, declarations, and the 678 consents on file provide substantial allegations and competent evidence of similarly situated claims of Plaintiffs and putative class members which surpasses this "fairly lenient standard."  *Id*.

## II.      WHETHER PLAINTIFFS' ALLEGATIONS STATE A CLAIM UNDER THE FLSA

Before determining whether this case should be conditionally certified, the Court must first

address Defendant's argument that Plaintiffs have not even alleged an FLSA violation in their complaint.  Although Defendant has not asked the Court to dismiss Plaintiff's case, Defendant does respond to Plaintiffs' conditional certification motion by challenging the sufficiency of the pleadings as in a FED. R. CIV. P. 12(b)(6) motion for failure to state a claim upon which relief can be granted. Citing *Sobczak v. AWL Indus.*, 540 F.Supp. 2d 354 (E.D. N.Y. 2007), Plaintiffs assert courts do not require a named plaintiff to show an actual FLSA violation, but rather that a factual nexus exists between the plaintiff's situation and the situation of other potential plaintiffs. *Id.* at 362.

Of course, Plaintiffs are correct that a motion for conditional certification is not an appropriate mechanism for a court to address the merits of a plaintiffs' underlying claim.  *See Saleen v. Waste Mgmt., Inc.*, 2009 WL 1664451, *6 (D. Minn. 2009).  Here, the Court is not using a motion for conditional certification as the mechanism by which it addresses Defendant's challenge to the sufficiency of Plaintiffs' pleadings. Rather, the Court is treating Defendant's argument similar to a motion to dismiss pursuant to Rule 12(b)(6).[2]  Similar to the court in *Sobczak*, the Court can properly consider first whether Plaintiffs have stated a valid claim under the FLSA before considering the

---

[2] FED. R. CIV. P. 12(b)(6) authorizes a dismissal of a complaint for "failure to state a claim upon which relief can be granted." A motion to dismiss under Rule 12(b)(6) tests for legal sufficiency of the claims alleged in the complaint. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true."  *See Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1959 (U.S. 2007). Before dismissal is granted, the court must accept all well-pleaded facts as true and view them in the light most favorable to the nonmovant. *Capital Parks, Inc. v. Southeastern Advertising and Sales Sys., Inc.*, 30 F.3d 627, 629 (5th Cir.1994).  A court need not, however, accept as true allegations that are conclusory in nature. *Kaiser Aluminum & Chem.  Sales, Inc.  v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir.1982).

4

separate issue of whether conditional certification is appropriate in this case. *Sobczak*, 540 F.Supp. 2d at 361-62. Unlike the defendants in *Sobczak*,[3] Defendant here did not present its argument regarding the viability of Plaintiffs' claims under the FLSA in a formal motion.  However, the parties fully addressed the issue in their pleadings and oral arguments June 30.   The Court agrees with Defendant that it would be a waste of the Court's and the parties' time and resources for notice to be sent to a potential class of over 20,000 people if Plaintiffs have not even alleged an FLSA violation.  *Williams v. Accredited Home Lenders, Inc.*, 2006 WL 2085312, *4-5 (N.D. Ga. 2006) (finding that conditional certification of a collective action would result in an "unconscionable" waste of scarce judicial resources and would subject the parties to "mind-boggling" discovery costs); *West v. Border Foods, Inc.*, 2006 WL 1892527, *7 (D. Minn. 2006) ("[N]either the remedial purposes of the FLSA, nor the interests of judicial economy, would be advanced if we were to overlook facts which generally suggest that a collective action is improper.").  Therefore, before analyzing whether to conditionally certify this action as a collective action, the Court considers whether, as urged by Defendant, Plaintiffs have failed to  state an FLSA violation.

"The FLSA requires that non-exempt employees who work more than forty hours in a work week must be paid one and one-half times their 'regular rate' of pay."  *Gagnon v. United Technisource Inc.*, 2010 WL 2106618 (5th Cir. 2010), *citing* 29 U.S.C. § 207(a).  Under the FLSA, an action to recover alleged unpaid overtime compensation may be brought by "one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29

---

[3] In *Sobczak*, at the oral hearing on the plaintiffs' motion for approval of an FLSA collective action notice, the defendants appeared to challenge the viability of Plaintiffs' legal theory as part of their opposition to the plaintiffs' motion. *Sobczak*, 540 F.Supp.2d at 357.  The court there suggested that the defendants formally raise the issue, and the defendants moved for judgment on the pleadings. *Id.*

U.S.C. §216(b).

Defendant argues none of the allegations made by Plaintiffs, nor the declarations submitted by Plaintiffs in support of their motion for conditional certification, state that any Plaintiff, declarant, or City Carrier has ever actually worked more than forty hours in a work week but was not paid earned overtime compensation as required by §207 of the FLSA. By attacking the sufficiency of Plaintiffs' allegations and evidence, Defendant contends Plaintiffs cannot make out an FLSA violation on some of Defendant's alleged practices as a matter of law, making collective certification of a potential class of over 20,000 City Carriers especially inappropriate.

Plaintiffs focus on their allegations, stating they clearly allege an FLSA violation. Plaintiffs point to their allegation regarding the failure or refusal of the USPS "to pay overtime compensation to the Plaintiffs and the Class Members as required by federal law in addition to not compensating the Plaintiffs and the Class Members for 'off the clock' labor, requiring the Plaintiffs and the Class Members to work through lunch to complete their routes and improperly altering the time records of the Plaintiffs and the Class Members to deprive them of full compensation." (Compl. at ¶14).

Plaintiffs further allege that in an effort to save overtime costs, "the officers and executives of the USPS have determined to give the Plaintiffs and the Class Members overburdened routes (i.e., routes that require more than eight (8) hours to deliver) but require the Plaintiffs and the Class Members to deliver the mail in eight (8) hours or less." *Id.* at ¶16. Plaintiffs correctly state the pertinent part of the FLSA as requiring each covered employer such as the USPS to compensate all non-exempt employees at a rate of not less than one and one-half times the regular rate of pay for work performed in excess of eight hours per day and forty hours per work week. *Id*. at ¶32. Plaintiffs point the Court to many parts of their complaint they contend set forth violations of the FLSA. For

example, Plaintiffs allege:

> After casing a particular day's mail volume and prior to leaving the post office to begin delivery, the Plaintiffs and Class Members inform the USPS (by and through their supervisors) on a daily basis if it will take more than eight (8) hours to complete their routes. The Plaintiffs and Class Members are able to determine whether it will take longer than eight hours to case the day's mail, deliver the mail and return to the post office based on their knowledge and experience and the mail volume on the particular day. Plaintiffs and Class Members have been routinely denied overtime (or disallowed overtime) even when it is clear that more than an eight hour shift will be required to complete their tasks and deliver the mail. Because many Plaintiffs and Class Members are denied overtime before they begin actual delivery of the mail, Plaintiffs and Class Members regularly work through their lunches, or take abbreviated lunch breaks, in order to deliver mail as quickly as possible on overburdened routes.

> Many days, however, even if the Plaintiffs and Class Members work through their lunches, their routes take longer than eight hours to complete and overtime is incurred. Upon returning to the post office after spending more than eight hours casing their mail and delivering it to their customers, the Plaintiffs and Class Members are still denied overtime compensation. Defendant, through policy implemented from within the USPS headquarters and that filters down to Regional Vice Presidents and local station managers, routinely and knowingly refuse[s] to compensate the Plaintiffs and Class Members for time in excess of eight hours in a given day. Defendant, acting by and through its various managers, routinely alters time records to deprive the Plaintiffs and Class Members of earned compensation and overtime, requires Plaintiffs and Class Members to complete beginning or end of day tasks "off the clock" and disallows overtime requests.

*Id.* at ¶¶17-18.

> Plaintiffs further allege:

> During the Class Period and their employment with the USPS, Plaintiffs and the Class Members routinely worked in excess of eight hours per day and forty hours per workweek without overtime compensation. Despite the hours worked by Plaintiffs and the Class Members, the USPS willfully, in bad faith, and in knowing violation of FLSA, failed and refused to pay them overtime compensation by improperly disallowing overtime, altering the hourly records of the Plaintiffs and similarly situated Class Members, requiring them to perform labor 'off the clock' without compensation, requiring them to work through lunches to complete their routes without compensation and otherwise failing to compensate them for overtime labor performed.

*Id*. at ¶33.

Not only does Defendant contend these allegations do not state any named plaintiff or putative collective action member actually worked in excess of forty hours in a work week without compensation as required by the FLSA, but Defendant further asserts many of Plaintiffs' allegations are not FLSA violations.  According to Defendant, Plaintiffs' allegation that certain unidentified USPS supervisors and managers deleted the clock ring (time) entries of certain unidentified USPS employees fails to allege an FLSA violation as a matter of law but instead describes a lawful USPS policy of properly disallowing time not worked.  In addition, Defendant asserts Plaintiffs' complaint that USPS supervisors "disallowed reasonable overtime requests" is not a violation of the FLSA as there is no federal entitlement to get overtime work. Defendant further asserts Plaintiffs' complaint that City Carriers worked through lunch periods does not state a claim under the FLSA;[4] it is at most a claim that the USPS has violated agreements with the union, which must be grieved under Article 15 of the Collective Bargaining Agreement ("CBA").[5]  Finally, to the extent Plaintiffs allege they were disciplined for working overtime without prior authorization, Defendant asserts this allegation

---

[4] According to Defendant, the USPS does try to build in a thirty-minute lunch break into City Carrier routes although there is no guarantee a particular city carrier will get the break. (Def. Ex. G, Inspection of Letter Carrier Route Form (Form 3999)). Defendant asserts the process of allocating time for individual city carrier lunch periods is part of the joint union-management route-evaluation process. (Def. Exs. H, I). According to Defendant, time that a City Carrier takes for lunch is deducted from the City Carrier's total street time (Def. Ex. G, Handbook M-39), and USPS policy is clear that City Carriers must be paid for all time worked whether or not that time was scheduled. (Def. Ex. C, Time & Attendance Handbook § 146.24 at 55).

[5] The current collective bargaining agreement between the USPS and the National Association of Letter Carriers AFL-CIO has been in place since November of 2006 and runs for five years (Def. Ex. F).  The CBA covers the conditions of employment, including wages and hours, for city carriers.  According to Defendant, under the CBA, the USPS must not only pay employees for all time worked as required by the FLSA, but it must also pay a more generous overtime benefit than what the FLSA requires.  Defendant's response at pg. 5.

fails to state an FLSA claim.  Here, Defendant points out that USPS policy is clear that "[a]n employee who continues to work contrary to a direct order from his or her supervisor must be paid for all time worked but may be subject to disciplinary action." (Def. Ex. C, § 146.24 at 55).[6]

Although Plaintiffs may not concisely state that a named plaintiff actually worked in excess of forty hours in a work week without being paid overtime compensation, Plaintiffs have alleged that Defendant routinely alters time records to deprive Plaintiffs and the putative collective action members of "earned compensation and overtime," indicating Plaintiffs actually worked over forty hours in a work week but did not receive earned overtime pay.  (Compl. at ¶18).  In paragraph 33 of the complaint, Plaintiffs further allege "Plaintiffs and the Class Members routinely worked in excess of eight hours per day and forty hours per work week without overtime compensation," and that despite these hours worked by Plaintiffs and the putative collective action members, Defendant failed "to compensate them for overtime labor *performed*."  *Id*. at ¶33 (emphasis added).  The Court finds Plaintiffs' allegations sufficiently state a potential FLSA claim.  Therefore, the Court considers whether, under the facts of this case, collective treatment is appropriate.

## III.    APPLICABLE LAW REGARDING COLLECTIVE TREATMENT

District courts have the discretionary power to conditionally certify a collective action and to authorize the sending of notice to potential class members pursuant to §216(b), but certification is not mandatory.  *Hoffman-La Roche, Inc. vs. Sperling*, 493 U.S. 165, 169 (1989).  Some types of cases in which courts have typically conditionally certified a collective action, authorizing the sending of notice to potential members, are job-classification cases, *see, e.g. Castle v. Wells Fargo*

---

[6] According to Defendant, the FLSA does not insulate employees from being disciplined for violating lawful directions from their employer. *See Chao v. Gotham Registry, Inc.*, 514 F.3d 280, 291 (2d Cir. 2008).

*Fin., Inc.*, 2008 WL 495705, *6 (N.D. Cal. 2008), and "doffing and donning" cases. *See, e.g. Thompson v. Speedway SuperAmerica, LLC*, 2009 WL 130069 (D. Minn. 2009).

Federal courts have devised two approaches for determining whether collective treatment under § 216(b) is appropriate: (1) the two-stage class certification set forth in *Lusardi vs. Xerox, Corp.*, 118 F.R.D. 351 (D. N.J. 1987); and (2) the "Spurious Class Action" outlined in *Shushan v. Univ. of Colorado*, 132 F.R.D. 263 (D. Colo. 1990). The Fifth Circuit has discussed the two approaches, but has not adopted a specific approach. *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1212 (5th Cir. 1995).[7] The *Lusardi* two-step approach is the more generally accepted method of analysis among federal courts and is the one the Court will apply in this case. *Barnett v. Countrywide Credit Indus.*, Inc., 2002 WL 1023161, *1 (N.D. Tex. 2002).

The *Lusardi* two-step approach lends itself to an ad hoc analysis on a case-by-case basis. *Mooney*, 54 F.3d at 1213. Under this approach, certification for collective action is divided into two phases: (1) the notice stage; and (2) the opt-in or merits stage. *Id*. at 1213-14. In the initial notice stage, the court makes a decision, based on the pleadings and affidavits, on whether notice of the action should be given to putative class members. *Id.* This decision typically results in "conditional certification" of a representative class. *Id.* at 1214.

The plaintiffs bear the burden of presenting preliminary facts showing that a similarly situated group of potential plaintiffs exist. *See D'Anna vs. M/A-Com., Inc.*, 903 F.Supp. 889, 893-894 (D. Md. 1995). The preliminary factual showing must be based upon competent evidence in

---

[7] In *Mooney*, the Fifth Circuit found it unnecessary to choose between the tests because it was apparent from the record that, no matter which methodology was utilized, the Fifth Circuit could not say the district court abused its discretion in finding the "opt-in" plaintiffs were not similarly situated. *Mooney*, 54 F.3d at 1216.

order to avoid stirring up unwarranted litigation. *Id*. at 894; *see also Holt,* 333 F.Supp.2d at 1270

(M.D. Ala. 2004)("Without such a requirement, it is doubtful that §216(b) would further the interests

of judicial economy, and it would undoubtedly present a ready opportunity for abuse."). However,

because the court has minimal evidence at the initial notice stage, the determination is made using

a fairly lenient standard and requires nothing more than substantial allegations that the putative class

members were victims of a single decision, policy, or plan. *Mooney*, 54 F.3d at 1214, n.8.

　　While the FLSA does not define the term "similarly situated," courts have held the plaintiffs

need only show their positions are similar, not identical. *Riojas v. Seal Produce, Inc*., 82 F.R.D. 613,

616 (S.D. Tex. 1979). The court should satisfy itself that there are other employees of the defendant

who are "similarly situated" with respect to their job requirements and pay provisions. *Dyback v.

State of Fla. Dept. of Corrections*, 842 F.2d 1562, 1567-68 (11th Cir. 1991). Notice is appropriate

if the court concludes there is "some factual nexus which binds the named plaintiffs and potential

class members together as victims of a particular alleged [policy or practice]." *Villatoro v. Kim Son

Restaurant, L.P.*, 286 F.Supp.2d 807, 810 (S.D. Tex. 2003).[8]

––––––––––––––

　　[8] According to the Fifth Circuit in *Mooney*, the second step of the two-step approach
found in *Lusardi*:

> is typically precipitated by a motion for 'decertification' by the defendant usually
> filed after discovery is largely complete and the matter is ready for trial. At this stage,
> the court has much more information on which to base its decision, and makes a
> factual determination on the similarly situated question. If the claimants are similarly
> situated, the district court allows the representative action to proceed to trial. If the
> claimants are not similarly situated, the district court decertifies the class, and the
> opt-in plaintiffs are dismissed without prejudice. The class representatives - - i.e. the
> original plaintiffs - - proceed to trial on their individual claims.

*Mooney*, 54 F.3d at 1214.

IV.     **ANALYSIS**

A.      **Whether Plaintiffs are similarly situated**

According to Plaintiffs, there are approximately 20,000 Affected Employees, scattered throughout five states, who are similarly situated to the named Plaintiffs in this action.  "A plaintiff who seeks conditional certification of a collective action against an employer must do more than show that some employees were paid less than the FLSA requires."  *Thompson*, 2009 WL 130069, *1.  "In just about any organization as large and diffuse as [the USPS], mistakes will occasionally be made, and employees will occasionally not receive compensation to which they are entitled under the FLSA."  *Id.*  In those situations, the employees can sue and recover the wages that are owed.  *Id.* "But to go further and receive conditional certification of a large nationwide class, those employees must 'come forward with evidence establishing a colorable basis for their claim that the putative class members were together the victims of a single decision, policy, or plan.'"  *Id., quoting West v. Border Foods, Inc.*, 2006 WL 1892527, *2 (D. Minn. 2006)(citation and quotations omitted).  It is not sufficient for the plaintiffs to simply allege that "a single decision, policy, or plan" has injured all members of the putative class.  Rather, the "plaintiffs must show that there is some factual basis beyond the mere averments in their complaint for the class allegations."  *Id.* (citation and quotations omitted).

This first look at the appropriateness of the collective action is not rigorous.  Rather, the Court must only determine that Plaintiffs have established a "colorable basis for their claim that a class of similarly situated plaintiffs exists." *Smith v. Heartland Automotive Services, Inc.*, 404 F.Supp.2d 1144, 1149 (D. Minn. 2005).  "A colorable basis means that plaintiff must come forward with something more than the mere averments in its complaint in support of its claim." *Thompson*,

2009 WL 130069 at *6 (citation and quotations omitted).  This "does not require th[e] court to make any findings of fact with respect to contradictory evidence presented by the parties nor does th[e] court need to make any credibility determinations with respect to the evidence presented." *Id.*  The court usually makes a decision based on the pleadings and any affidavits that are submitted.  *See H&R Block, Ltd. v. Housden*, 186 F.R.D. 399, 400 (E.D. Tex. 1999)(In assessing the plaintiffs' allegations, courts have also considered factors such as whether potential plaintiffs were identified, whether affidavits of potential plaintiffs were submitted, and whether evidence of a widespread plan was submitted.).  However, "some identifiable facts or legal nexus must bind the claims so that hearing the cases together promotes judicial economy." *Thompson,* 2009 WL 130069 at *6 (citation and quotations omitted).

Plaintiffs bear the burden of establishing that they are similarly situated to the proposed class of other employees.  *England v. New Century Financial Corp*., 370 F.Supp.2d 504, 507 (M.D. La. 2005).  Similarly situated does not necessarily mean identically situated.  *Id*.  While there is a group of persons with similar positions who are willing to opt-in this action, even at the notice stage, "a showing that employees are 'similarly situated' entails more than just a matching of job responsibilities." *Xavier v. Belfor USA Group, Inc.*, 585 F.Supp.2d 873, 877 (E.D. La. 2008).  Plaintiffs must present at least some evidence beyond unsupported factual assertions of a "single decision, policy, or plan." *Id.* Stated differently, an FLSA collective action determination is appropriate where there is a "demonstrated similarity among the individual situations . . . some factual nexus which binds the named plaintiffs and the potential class members together as victims of a particular alleged [policy or practice]." *Id.* at 877-78 (brackets in original).  This standard has been applied in this district in *H&R Block*:

> [A]lthough the standard for satisfying the first step is lenient, . . . the court still requires at least 'substantial allegations that the putative class members were together victims of a single decision, policy or plan infected by discrimination.' [C]ourts who have faced the question of whether movants established substantial allegations have considered factors such as whether potential plaintiffs were identified . . .; whether affidavits of potential plaintiffs were submitted . . .; and whether evidence of a widespread discriminatory plan was submitted. . . .

186 F.R.D. at 400.

Plaintiffs' allegations, discussed in detail above, outline Plaintiffs' assertions that the USPS has an unlawful pattern of disallowing overtime hours pursuant to the USPS' practices of making clock ring deletions, refusing reasonable overtime requests, improperly denying overtime compensation on overburdened routes, and forcing the Plaintiffs and Affected Employees to work through lunches or breaks or otherwise "off-the-clock."   This Court has previously required allegations to be grounded in fact and supported by competent evidence when considering whether Plaintiffs were similarly situated.  *See Hayes v. Laroy Thomas, Inc.*, 2006 WL 1004991, at *4 (E.D. Tex. April 16, 2006)(Hayes stated in his declaration that he was "required to come in at least thirty (30) minutes early each day to load trucks before going to a particular work site" and he "was not compensated for travel time to the work site.").

The Court will assume, as urged by Plaintiffs, that all the named plaintiffs and putative collective action members are city letter carriers; they have similar jobs and job duties; and they are paid hourly wages.  The question becomes whether Plaintiffs have alleged a common policy or practice and made a factual showing sufficient to demonstrate that the named plaintiffs and potential collective action members together were victims of a common policy or practice that violated the law.  *See Simmons v. T-Mobile USA, Inc.*, 2007 WL 210008 (S.D. Tex. 2007).   Here, Plaintiffs argue they and the putative collective action members are all subject to the same alleged USPS

14

policy or practice described in their complaint. The Court will first carefully consider Plaintiffs' allegations in the complaint regarding an alleged  single USPS policy or practice.  The Court will then consider the evidence submitted by Plaintiffs in support of their allegations.

**1.      Plaintiffs' allegations regarding a single policy or practice**

The only common USPS policy alluded to by Plaintiffs in their complaint is an alleged "policy implemented from within the USPS headquarters and that filters down to Regional Vice Presidents and local station managers," who routinely and knowingly refuse to compensate the Plaintiffs and Class Members for time in excess of eight hours in a given day." Compl. ¶ 18.[9] In their reply, Plaintiffs assert they "are not seeking daily overtime but overtime in excess of 40 hours per week as a result of the cumulative effect of working in excess of 8 hours per day. . . .  Moreover, Plaintiffs are not suing Defendant for daily overtime or for the opportunity to work overtime, or to be paid for time worked in excess of eight hours a day[.]"  Plaintiffs' reply at 10. Rather, Plaintiffs are alleging a policy or practice by the USPS of denying City Carriers "overtime compensation owed them."  *Id*. at 6.

Regarding how the USPS specifically denied overtime compensation owed Plaintiffs and putative collective action members, Plaintiffs allege they have "(a) had overtime disallowed, (b) had time improperly changed by a supervisor, (c) been required to work through lunch to complete their route, (d) worked while off-the-clock *and/or* (e) worked overtime and not been paid."  (Compl. at ¶12).  Acknowledging the USPS accomplishes this violation in several different ways, such as having city letter carriers work through lunch and breaks, or work off the clock, Plaintiffs assert the

---

[9] The FLSA only protects employees who have worked more than forty hours in a week but were not paid overtime. 29 U.S.C. § 207(a).

"end result is the same – denial of earned overtime compensation to Plaintiffs and the putative class members." *Id.*

These "several different ways" alleged by Plaintiffs are actually several different alleged practices by the USPS in denying City Carriers overtime compensation allegedly owed Plaintiffs and the putative collective class members. Plaintiffs' repeated use of the "and/or" construction throughout their pleadings has created numerous different alleged practices that share no commonality. Given Plaintiffs' use of the "and/or" construction in their complaint, each named plaintiff or putative collective action member could be involved in this lawsuit with only one of the several different alleged practices listed in the complaint.

In other words, some City Carriers may claim they had an overtime request disallowed, but they actually worked overtime anyway and were not paid. Other City Carriers may claim they were not paid for earned overtime and also that their supervisors improperly altered their time records. Other City Carriers may have been denied overtime requests by their supervisor but then worked a little harder to still get it done in eight hours, not actually working in excess of forty hours that work week. For example, one City Carrier may have worked through lunch on a particular day because the high mail volume required him or her to finish the job in eight hours. That same carrier may have worked less than eight hours on another day of the week because the mail volume was not overwhelming. Given Plaintiffs' allegations, and their use of the "and/or" construction, there are endless variations of these types of scenarios, making Plaintiffs' allegations highly individualized.

The purpose behind an FLSA collective action is to bring similarly-situated employees that were subjected to the same policy or practice together in one case because it is more efficient than

having the claims tried separately. *Hoffman-LaRoche*, 493 U.S. at 170.[10] Plaintiffs' broad-ranging

allegations, on their face, show this purpose would be thwarted if this case were conditionally

certified.  Simply put, Plaintiffs' allegations in their complaint fail to allege they and the putative

collective action members are bound together as victims of a single, particular policy or practice that

violates the FLSA.

The Court will consider whether the evidence submitted by Plaintiffs demonstrate similarly-

situated employees were subjected to the same alleged USPS policy or practice.  In support of their

allegations, Plaintiffs filed 678 consent forms of current and former USPS employees, which

according to Plaintiffs, evidences the desire of these "similarly situated" individuals to opt-in this

lawsuit. Plaintiffs have also submitted eleven declarations.[11]

**2.      Plaintiffs' evidence regarding a single policy of practice**

Plaintiffs ask the Court to take judicial notice of the 678 consent forms filed as of the date

───────────────

[10] Some types of FLSA cases, characterized as "job-classification" and "doffing and donning" cases by Defendant, are more amenable to collective action treatment because the plaintiffs are challenging a single, identifiable policy or practice of the employer, and the claims depend on common proof.  *See, e.g. Williams*, 2006 WL 2085312, *4-5 (exempt employees challenging their exempt status); *see, e.g. Thompson*, 2009 WL 130069 (alleging employees were required to perform a number of tasks "off the clock" and were not compensated for all the overtime hours they worked); *see also Hayes*, 2006 WL 1004991 (alleging the employer had a policy to require the employees to work off-the-clock for performing the mandatory, identical task of loading the trucks).

[11] Five of the declarations are from presidents and a union steward of local branches of the National Association of Letter Carriers within the Southwest Area (Sid Simmons, Joe Ervin, David Pratt, Glenn Chapoton, and Nancy Hall). One declaration is from a retired Postal Service manager (Andrew Tengeres). Four declarations are from named Plaintiffs (Doyle Hickson, Rafael Campos, Burnis Hall, and Carol Meadows).  Finally, Plaintiffs have submitted the declaration of  Billy H. Davis, Jr., counsel for Plaintiffs, wherein Davis provides information regarding the residences of 660 members of the putative class.  Plaintiffs assert the evidence shows they and the putative collective action members are similarly situated.

of their reply.  Plaintiffs represent that each of these opt-in plaintiffs have "consented to join this lawsuit and stated within his or her Consent Form that the Defendant had denied him or her overtime compensation."[12]  Plaintiffs' reply at 4.  However, as urged by Defendant, the sheer number of consents alone is not enough to show that similarly situated employees exist who were victims of the same alleged policy, practice, or decision. The number of consents on file is not dispositive of the certification question. *See Saleen*, 2009 WL 1664451 at *1, 9 (denying motion for conditional certification where 211 consents had been filed).

More importantly, the consent form provides as follows:

The United States Postal Service denied me overtime compensation, required me to work "off the clock," changed my time records to deny me compensation *and/or* required me to work through my lunch breaks to complete my route in violation of federal wage and hour laws.

(Plaintiffs' Ex. G to mot.) (emphasis added).[13]

Plaintiffs' reliance on the "and/or" construction means that the opt-ins could have consented to join a class based on any one or more of the practices listed in the consent form. Only one of the four alleged practices listed is that the USPS denied overtime compensation.  Missing from the

_____

[12] Plaintiffs never explain what they mean by saying that they had overtime "denied." According to Defendant, Plaintiffs' real complaint in this suit is that they are not getting to work the overtime they want, not that they have actually worked overtime but were not paid for it.  At the hearing, Plaintiffs stated they are not seeking additional overtime, and they are claiming they actually worked overtime but were not paid for it.

[13] The consent form also does not include any information indicating that the signatory falls within the definition of the proposed class. Notably, the form does not indicate: 1) whether the signatory is a City Carrier; 2) whether the signatory worked in the Southwest Area; or 3) the signatory's dates of employment. *See Melendez Cintron v. Hershey Puerto Rico, Inc.*, 363 F.Supp.2d 10, 18 (D.P.R. 2005) (granting defendant's motion to strike consent forms from the record, noting that the "consent form must provide facts enabling the employee to make an initial representation to the Court that they are factually 'similarly related' to the Plaintiffs already in the complaint").

consent form is any statement that the USPS denied employees overtime compensation for time actually worked in excess of forty hours in a work week, the only practice which, if proven, would be a violation of the FLSA.

The Court also considers that the website Plaintiffs' counsel put on the internet to notify class members regarding this suit (**www.uspslawsuit.com**) has the same four alleged practices listed rather than one common or single alleged USPS practice.  The website's home page tells putative class members that they "should join this class action lawsuit" if "any of the conduct identified" in certain bullet points on the website has happened to them. In addition to the bullet point "have worked overtime and not been paid," the other bullet points include the following: having "had overtime disallowed;" having "had time changed by a supervisor;" having "worked through lunch to complete [a] route;" or having "worked 'off the clock.'"  In other words, any City Carrier who has ever (1) had a request for overtime disallowed for any reason (e.g., because there was no overtime work available); (2) had time changed by a supervisor for any reason (e.g., to correct an error or because the employee did no work during the time); or (3) worked through lunch for any reason could reasonably believe, based on the website, that they had a viable claim under the FLSA.  Rather than demonstrate a similarity among the individual situations or show some factual nexus which binds the named plaintiffs and the putative members together as victims of a particular alleged USPS policy or practice, the content of the consent forms, combined with the statements contained on the website, demonstrate that the putative collective action members have allegedly been victims of as many as four different USPS practices.   Rather than reveal the alleged existence of a single USPS policy or practice, the consent forms themselves reveal there are at least four different USPS practices alleged to have violated the FLSA.  The declarations submitted by Plaintiffs, discussed in

19

detail below, further illustrate this point.

The Court first considers the four declarations from the named plaintiffs.  In his declaration, Hickson states that he has worked for the USPS for the last three years and that he has been assigned overburdened routes by the USPS.  (Hickson Decl. at ¶¶ 1, 3).  According to Doyle Hickson, the USPS has denied him "overtime compensation when trying to complete the overburdened routes." (*Id*. at ¶3).  Hickson further states that based on his observations of and conversations with other city letter carriers, Hickson believes the USPS has a policy or practice of assigning overburdened routes to city letter carriers and then denying them necessary overtime compensation.  (*Id*. at ¶4).

In their declarations, Rafael Campos and Burnis Hall make these same statements.  They further add that the USPS has denied them overtime compensation when trying to complete overburdened routes by doing one or more of the following: (i) disallowing reasonable overtime requests and unreasonably requiring them to get their overburdened routes delivered without overtime or without the correct amount of overtime; (ii) requiring them to work through lunches and breaks in order to avoid overtime; (iii) imposing discipline on them for unauthorized but necessary overtime which caused them to work through lunches, breaks, and off the clock to avoid further discipline due to unauthorized but necessary overtime; and (iv) intimidating them to not report overtime.  (Capos Decl. at ¶3)(Hall Decl. at ¶ 3).

In her declaration, Carol Meadows states that during the last three years she has been assigned overburdened routes by the USPS, and the USPS has denied her overtime compensation. (Meadows' Decl. at 1).  Specifically, Meadows states the USPS has disallowed her reasonable overtime requests and unreasonably required her to get her overburdened route delivered without overtime or without the correct amount of overtime; the USPS required her to work through lunches

and breaks in order to avoid overtime; the USPS required her to work off the clock; the USPS imposed discipline on Meadows for unauthorized but necessary overtime which caused her to work through lunches, breaks, and off the clock to avoid further discipline due to unauthorized overtime; and the USPS intimidated her from reporting overtime.  (*Id.*).  Meadows believes the USPS has a policy or practice of assigning overburdened routes to city letter carries and then denying them overtime compensation.  (*Id.* at 1-2).

The four named plaintiffs assert the USPS has denied them overtime compensation by, among other things, requiring them to work through lunches, breaks, and/or "off the clock" in order to avoid overtime or by intimidating them from reporting overtime.  These declarations set forth at least four different USPS practices alleged to have violated the FLSA.

Plaintiffs have submitted five nearly-identical declarations from the union presidents and a union steward.  The declarants first state they are aware of various "maximize productivity through intimidation" practices employed by USPS on letter carriers.  (Simmons Decl. at ¶3)(Erwin Decl. at ¶3)(Pratt Decl. at ¶3)(Chapoton Decl. at ¶3)(Hall Decl. at ¶3).  The declarants are aware of complaints from letter carriers that are being constantly told to "deliver in 8″" meaning they are to make sure they deliver their routes without overtime.  (Simmons Decl. at ¶4)(Erwin Decl. at ¶4)(Pratt Decl. at ¶4)(Chapoton Decl. at ¶4)(Hall Decl. at ¶4).  The declarants are also aware that letter carriers are consistently warned against working overtime and are routinely denied proper overtime requests and that due to the denials, warnings, and other intimidation factors, "many letter carriers have quit requesting overtime." (Simmons Decl. at ¶¶5-6)(Erwin Decl. at ¶¶5-6)(Pratt Decl. at ¶¶5-6)(Chapoton Decl. at ¶¶5-6)(Hall Decl. at ¶¶5-6).  According to the declarants, many letter carriers are working through lunches and/or breaks, running their routes, and/or finishing their day's

work "off the clock," by clocking out and then completing the end of the day tasks.  (Simmons Decl. at ¶6)(Erwin Decl. at ¶6)(Pratt Decl. at ¶6)(Chapoton Decl. at ¶6)(Hall Decl. at ¶6).  The declarants are aware that letter carriers have had their overtime wrongfully disallowed; have been reprimanded and/or disciplined and/or had their jobs threatened for the overtime; and believe their time records have been altered to delete overtime. (Simmons Decl. at ¶¶7, 8, & 10)(Erwin Decl. at ¶¶7, 8, & 10)(Pratt Decl. at ¶¶7, 8, &10)(Chapoton Decl. at ¶¶7, 8, &10)(Hall Decl. at ¶¶7,8, &10).  From conversations with presidents and other officials of other local branches of the National Association of Letter Carriers, each declarant states he or she understands that letter carriers throughout the Southwest Region are experiencing and being subjected to the same overtime issues by the USPS and that many letter carriers are afraid to complain of these overtime issues because of fear and threat of retaliation from their supervisors.  (Simmons Decl. at ¶¶11, 12)(Erwin Decl. at ¶¶11, 12)(Pratt Decl. at ¶¶11, 12)(Chapoton Decl. at ¶¶11, 12)(Hall Decl. at ¶¶11, 12).

In his declaration, Andrew Tengeres, a long term USPS supervisor and manager of supervisors in the Southwest Region, states he is aware of unreasonable demands made by the USPS to deliver the mail without overtime and that many supervisors require their city letter carriers to work their overburdened mail routes without incurring overtime. (Tengeres Decl. at ¶¶4-5). Mr. Tengeres states he never employed any of the USPS alleged practices, and he believes the USPS forced him to retire in 2009 because of his unwillingness to employ those practices.  (Tengeres Decl. at ¶8).

In its motion to strike, Defendant requests the Court strike or not consider the declarations of Simmons, Ervin, Pratt, Chapoton, Hall, and Tengeres. Defendant not only objects to certain statements as being hearsay, but Defendant also questions the relevance and the foundation of certain

statements.[14] Regarding Mr. Tengeres' declaration, Defendant not only makes evidentiary objections to statements made in the declaration, but Defendant also asserts Mr. Tengeres was on medical leave during most of the proposed class period, indicating he cannot have personal knowledge of any USPS practice that occurred after May 1, 2007.  Defendant also takes issue with Mr. Tengeres' statement that the USPS "forced [him] to retire" because he would not implement the alleged improper practices.  (Tengeres Decl. at ¶8). According to Defendant, Tengeres had earlier claimed in an EEOC proceeding he brought in March 2009 that he was forced to retire for very different reasons, namely race, age, and disability discrimination.[15]

Defendant does raise valid points regarding the personal knowledge and foundation for certain identical or nearly identical statements made in the declarations.  But the deficiencies raised do not mandate the declarations be stricken. The Court is considering all of the evidence provided by Plaintiffs to determine whether conditional certification of a collective action is appropriate under the facts of this case.

Although Plaintiffs make various allegations that the USPS "denied overtime compensation," deleted "clock rings," and gave employees "overburdened routes" requiring them to work through

---

[14]  For example, Defendants asserts the declarants do not say how, from whom, or when they became "aware" of the practices described, nor do they allege that they ever personally witnessed the alleged practices being committed. Defendant further asserts the declarants do not define the vague phrase "maximize productivity through intimidation" practices, nor do they identify who allegedly applied the "practices" or how, when, or where they were applied.

[15] At the hearing, the Court ordered Plaintiffs to submit an amended declaration, clarifying the statement made in ¶ 8.  Plaintiffs submitted a declaration of Rebecca L. Fisher in clarification of Mr. Tengeres' statement.  Ms. Fisher has been Mr. Tengeres' attorney since May of 2007 in the EEOC claims filed by Mr. Tengeres against the USPS and in Mr. Tengeres' Merit System Protection Board proceeding currently pending against the USPS.  Ms. Fisher's declaration satisfied the Court's questions regarding Mr. Tengeres' statement in paragraph 8 of his declaration in this case.

lunch and otherwise "off the clock," they have not submitted any evidence showing "that the reason why the employees were not compensated for [these activities] is not because of human error or a rogue [] manager, but because of a corporate decision to ignore [the Postal Service's] published policies[,]" which require that all overtime worked be paid.[16] *Thompson*, 2009 WL 130069, at *2 (emphasis in original).  Plaintiffs' allegations of a single, unidentified USPS "policy" and the declarations from a few declarants wherein they state they "believe" such a policy exists is insufficient. *Tracy v. Dean Witter Reynolds, Inc.*, 185 F.R.D. 303, 311 (D. Colo. 1998) ("even if it is true that some individuals failed to receive appropriate compensation for hours which were worked overtime, that fact alone does not lead [one] to conclude that there *must* be some unlawful national policy out there somewhere") (emphasis in original).

Plaintiffs' evidence fails to "provide a colorable basis that all the putative members of the collective action 'sustained injury from *one* unlawful policy.'" *Saleen*, 2009 WL 1664451, at *6 (*quoting Ray v. Motel 6 Operating Ltd. P'ship*, 1996 WL 938231, at *4 (D. Minn. Mar. 18, 1996)) (emphasis added).  In fact, as discussed in detail above, the consent forms, website, and declarations from the named Plaintiffs actually reveal at least four different alleged practices of the USPS, making "the individual circumstance of each worker too particularized to warrant collective certification [regionwide.]"  *See Xavier*, 585 F.Supp.2d at 880 ("There is simply no evidence of a generally applicable policy or practice and the individual circumstance of each worker is too particularized to warrant collective certification nationwide").

This case is similar to the situation in *Saleen v. Waste Mgmt., Inc.*, cited earlier herein.  The

---

[16] Defendant points out it is the policy of the USPS that employees must be paid for all overtime worked, whether or not it was pre-approved. (Defendant's Response at 2-4).

plaintiffs in *Saleen* moved for conditional certification of a potential class of 20,000 to 30,000 waste-collection drivers of Waste Management, Inc. ("WMI"), a national waste-services company. *Id.* at *1-2. The plaintiffs alleged that WMI subjected drivers to an unlawful time-keeping system that automatically deducted 30-minute meal breaks from employee time records. *Id.* The plaintiffs made allegations similar to those made in this case, claiming that supervisors pressured drivers to work through lunch to complete pick-ups, contrary to the defendant's official policies. *Id.* at *5-6.

There, the plaintiffs submitted 112 declarations and deposition excerpts suggesting that supervisors put pressure on drivers to work through lunch. *Id.* at *5. Each declarant testified that for a majority of shifts he or she worked through the meal period but was not compensated for the overtime. *Id.* The court noted that "[f]rom the experiences of these individuals, the plaintiffs ask the court 'to infer that WMI had a common, nationwide, unlawful policy not to compensate for untaken meal breaks.'" *Id.* The court refused to draw the inference, finding that the plaintiffs failed to present sufficient evidence to support it.

> The reasons alleged for WMI's failure to compensate are too varied for the Court to conclude that there is a single decision, policy, or plan by WMI not to [sic] compensate its drivers . . . for time worked through meal breaks. For instance, 38 of the 112 declarants state that they were not compensated because they were unaware of a way to reverse the automatic deduction. Another 33 of the declarants state that they were told (or that it was made clear to them by their supervisors) that the meal break would be deducted from their hours regardless of whether they actually took the break or attempted to reverse the automatic deduction. And 42 of the declarants state that they were not provided overtime compensation for time worked through the meal breaks, but do not address why they were unable to reverse the automatic deductions.

*Id.* The "myriad reasons alleged why the deponents and declarants were not paid for untaken meal breaks" did not provide a colorable basis that the plaintiffs and the potential collective action members were together the victims of a single decision, policy, or plan. The court found that this

was insufficient to allege a common policy, noting that "this case is not about meal-break labor practices; it is about overtime compensation for putatively thousands of employees, and Plaintiffs' showing demonstrates that there is no single policy about that core issue from which a collective action can emanate." *Id.* at *6. The Court notes the plaintiffs in *Saleen* alleged something resembling a policy, namely WMI's policy to automatically deduct 30 minutes for a meal time regardless of whether the driver took the full break.

Considering all of the allegations and the evidence submitted by Plaintiffs, Plaintiffs fail to allege or provide any evidence showing that they and the potential class members are bound together as victims of a single or common policy, practice, or decision that violates the FLSA. Plaintiffs attempt to identify the USPS policy or practice broadly, namely the failure of the USPS to pay overtime compensation for putatively thousands of employees.  As in *Saleen*, Plaintiffs' showing demonstrates that there is no single policy or practice about that core issue from which a collective action can emanate. 2009 WL 1664451 at * 6.[17]

## B.      Whether a collective action is manageable

The Court's task at the notice stage is to determine "whether Plaintiffs have come forward with sufficient proof to convince the Court" that it makes sense to vastly expand the scope of the litigation at considerable cost to all concerned due to "the expense of sending out notice to the

---

[17] This is not a situation where, in considering whether to conditionally certify this collective action, the Court's examination of the parties' factual submissions and arguments requires the Court to weigh the merits of Plaintiffs' claims.  "The Court has taken care not to consider whether Plaintiffs or the putative collective members were, in fact, deprived of overtime compensation in violation of the FLSA. *See Saleen*, 2009 WL 1664451 at * 6.  The Court has not made a determination of whether Plaintiffs or the putative collective action members did, in fact, work more than forty hours in a work week without receiving overtime compensation. *Id.* Nor has the Court made credibility determinations in its review of the record. *Id.*

putative collective members, the substantial widening of discovery, and the burden on the courts of administering the thousands of claims brought by opt-ins nationwide." *Saleen*, 2009 WL 1664451, at *8. Courts have an obligation to step in at the beginning of a case to ensure that the proposed class is manageable, especially one as massive as Plaintiffs propose here. *See Freeman v. Wal-Mart Stores, Inc.*, 256 F.Supp.2d 941, 945 (W.D. Ark. 2003) (7,000-member proposed class) (noting that because Wal-Mart "is one of the largest employers in the world, it is incumbent upon Plaintiff to propose a class that is sufficiently defined and manageable from the outset"); *Saleen*, 2009 WL 1664451, at *8   (20,000-30,000 proposed class) ("Were such a complete review avoided, as Plaintiffs suggest it must be, a court would abandon its duty to determine whether the matter before it is an appropriate case for collective treatment"); *Williams*, 2006 WL 2085312, *4 n.4 (noting that "[t]here is a world of difference between an FLSA case" involving as many as 1,000 potential class members and a case with many fewer members); *Basco v. Wal-Mart Stores, Inc.*, 2004 WL 1497709, *5 ("To create a collective action class, including the cost associated with that when a Court is convinced that there is insufficient support for the same prior to certification would be an exercise in futility and wasted resources for all parties involved"); *cf. Hayes*, 2006 WL 1004991, at *7 (granting motion for conditional certification but noting that the proposed class was not large, in contrast to the proposed class in *Freeman*).

Throughout their briefing Plaintiffs have never explained why it would serve the interest of judicial efficiency to try their claims along with those of potentially over 20,000 other people, of which 678 have already filed consent forms. Plaintiffs do suggest using a sampling method of discovery would minimize the burden on the parties and the Court.  Given the at least four different alleged USPS practices, sampling would not work in this case.

As urged by Defendant, forcing the claims together here would be "utterly unmanageable." *Williams*, 2006 WL 2085312, *5. In establishing an FLSA violation for failure to pay overtime, Plaintiffs propose to show that some class members had their clock rings improperly deleted, while others felt pressured to work through lunch, while others had their request for overtime disallowed, while still others had their request for overtime allowed but were later disciplined. Plaintiffs would also have the Court evaluate thousands of individual City Carrier mail routes to determine whether each one was "overburdened," which would necessarily involve an examination into day-to-day factors like mail volume, weather, staffing, carrier capacity, and the type of route at issue (e.g. business or residential, walking or driving, etc.). (*See generally* M-39 Handbook at § 112). Plaintiffs' complaints about being assigned "overburdened routes" are based on individual decisions made by individual managers (with the input or direct participation of union officials and City Carriers) spread across the five-state Southwest Area. Any examination into these decisions would have to be done on a manager-by-manager level.  After doing all this, the Court would still have to look at the time records of thousands of City Carriers to determine whether each employee actually worked more than forty hours in a work week but was not paid overtime. Plaintiffs' individualized allegations, combined with the potentially massive putative action, make conditional certification of a collective action unmanageable.

The power to authorize notice must be exercised with discretion and only in appropriate cases. *See Haynes vs. Singer Co.*, 696 F.2d 884, 886 (11th Cir. 1983).  Considering Plaintiffs' failure to provide a colorable basis that they and the putative members of the collective action are similarly situated with respect to a single policy, practice, or decision, and given manageability concerns, this case is more appropriate for individualized actions. Accordingly, it is

**RECOMMENDED** that Plaintiff's Motion to Conditionally Certify Class (Docket Entry # 20) be **DENIED**.

Within fourteen (14) days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge.   28 U.S.C.A.  636(b)(1)(C).  Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days after service shall bar an aggrieved party from *de novo* review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court except on grounds of plain error or manifest injustice.  *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir.1988).  It is further

**ORDERED** that Defendant's Motion to Strike Declarations Offered in Support of Plaintiffs' Motion to Conditionally Certify Collective Action (Docket Entry # 41) is **DENIED.**

**SIGNED this 22nd day of July, 2010.**

CAROLINE M. CRAVEN
UNITED STATES MAGISTRATE JUDGE

29